UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 04-3563(DSD/JJG)


Stacy Altonen,

       Plaintiff,

v.                                                                **ORDER**

City of Minneapolis, William
McManus in his capacity as
Chief of Police, City of
Minneapolis and William McManus,
individually,

       Defendants.


    Charles T. Hvass, Jr., Esq. and Hvass, Weisman & King,
    Suite 1025 Medical Arts Building, 825 Nicollet Mall,
    Minneapolis, MN 55402, counsel for plaintiff.

    James A. Moore, Assistant City Attorney, 333 South
    Seventh Street, Suite 300, Minneapolis, MN 55402, counsel
    for defendants.


    This matter is before the court upon defendants' motion for
summary judgment. Based on a review of the file, record and
proceedings herein, and for the reasons stated, the court grants
defendants' motion.


**BACKGROUND**

    This is a civil rights action under 42 U.S.C. § 1983 for an
alleged deprivation of rights under the First Amendment of the

United States Constitution.[1]  Plaintiff Stacy Altonen has worked for defendant City of Minneapolis ("City") since September of 1987. The Minneapolis City Council appointed defendant William McManus as chief of police in February of 2004.  Altonen brings this lawsuit claiming that defendants retaliated against her for supporting one of McManus's opponents and for filing a lawsuit against the City.

On February 9, 2003, former Chief of Police Robert Olson appointed Altonen, then captain of the special investigations division, to the position of inspector of the second precinct.  An inspector is an at-will appointee who is a department-wide resource for the chief of police and is a member of the chief's executive management team.  (See Moore Aff. exs. 8, 9.)  As an inspector, Altonen's duties included planning and reviewing precinct operations for quality control, supervising precinct personnel and maintaining communication with the mayor, city council and the public.  During the fall of 2003, the Minneapolis City Council began its search for a new chief of police, and Altonen supported the candidacy of Deputy Chief Lucy Gerold.  Specifically, she telephoned two city council members to voice her support and, when asked, told people that she thought Gerold was the best candidate.

---

[1]  The statute provides that "[e]very person who, under color of [law], subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ...."  42 U.S.C. § 1983.

(Altonen Dep. at 87.)  McManus was ultimately appointed, and was sworn in on February 17, 2004.

In December of 2003, Lieutenant Robert Skomra informed the City's human resources director, Pamela French, that he believed Altonen had caused him to be transferred out of the homicide unit for inappropriate and personal reasons.  (See French Dep. at 8-9.) The City hired an external investigator, Jessica Jackson, to look into the allegation with the assistance of George Caldwell, the human resource department's director of employment services. Altonen did not become aware of the allegation until shortly prior to McManus's appointment to chief of police in February of 2004. In an initial report dated February 26, 2004, Jackson and Caldwell informed French that the allegation was not sustained.  (See Jackson Dep. at 20; Hvass Aff. ex. 5a.)  Around February 26, Jackson also informed Altonen that the allegation was not sustained.  Altonen then requested a copy of the investigatory file, and Jackson referred her to the human resources department. (Altonen Dep. at 50-54.)  On March 1, 2004, Altonen's attorney requested the file, but the city attorney would not release the file because the investigation had not yet been completed.  (See French Dep. at 37; Hvass Aff. ex. 5e.)  On March 3, 2004, Jackson and Caldwell completed an amended final report and concluded that

3

Altonen did not have the power to order Skomra's transfer or to unduly influence the transfer decision.  (See Jackson Dep. at 20; Hvass Aff. ex. 5c.)

On March 5, Skomra met with McManus and Deputy Chief Tim Dolan and stated that he believed his transfer from the homicide unit was related, in part, to the manner in which he had handled the investigation of the shooting of Officer Duy Ngo.  (See McManus Dep. at 22; Hvass Aff. ex. 5e.)  On March 9, Altonen filed a lawsuit against the City, alleging a violation of her right to the contents of the investigation file under the Minnesota Government Data Practices Act (the "MGDPA lawsuit").[2]  On March 11, at a meeting attended by Caldwell, French, McManus and a city attorney it was decided that further interviews were necessary before the investigation could be closed.  (See French Dep. at 32-35; McManus Dep. at 18.)  Although the record is not clear as to when the investigation was closed, Altonen received the contents of the file in May of 2004.

At some point prior to March 11, 2004, Altonen's supervisor, Deputy Chief Sharon Lubinski, advised McManus that another officer should attend the Senior Management Institute of Policing instead of Altonen based on Lubinski's perception that Altonen was not interested in attending and had not registered.  (See Lubinski Dep.

---

[2]  See Minn. Stat. §§ 13.01-.99.

4

at 20; McManus Dep. at 19.)  Altonen was informed that McManus was sending another officer to the institute on March 11.

Lubinski had concerns about Altonen's attitude, communication skills and ability to effectively communicate with others or work collaboratively with the command staff.  (See Lubinski Dep. at 15-16, 29-30; McManus Dep. at 65-67.)  Lubinski's concerns were based, in part, on a meeting of inspectors that Altonen attended on March 4, 2004, where perceived communication issues between McManus and his staff were discussed.  (See Altonen Dep. at 121; Lubinski Dep. at 18-19.)  Lubinski did not have any substantial concerns, however, with plaintiff's performance in the second precinct. (Lubinski Dep. at 14-17, 29-30.)  Lubinski gave Altonen a positive performance review and a $5,000 pay increase on March 5, 2004. (See Altonen Aff. ¶¶ 4, 5.)

In addition to Lubinski's concerns, Dolan and McManus had observed that Altonen exhibited animosity towards McManus.  (See Dolan Dep. at 9; McManus Dep. at 66.)  McManus, Lubinski and Dolan discussed reassigning Altonen in light of the resignation of the director of administrative services and their goal of downsizing. (Dolan Dep. at 6-8, 11-12.)  Dolan believed that Altonen's skills and experience made her a good fit for the position of captain of administrative services, a position that would have reported directly to Dolan.  (Id. at 11-12.)

5

On May 13, 2004, at a meeting attended by Dolan, McManus and Lubinski, McManus told Altonen that she was being reassigned from inspector to captain of the administrative services division, which resulted in a $12,000 pay reduction and loss of her take-home vehicle. McManus would not tell Altonen the reason behind the reassignment and stated only that it was not open for discussion. McManus testified that he made the decision to reassign Altonen based on the recommendations of Lubinski and Dolan. (McManus Dep. at 65, 75-76.) He understood their recommendation to indicate that Altonen had a bad attitude and was not a team player. (Id. at 65.) McManus further believed that the administration's message was not being carried forward in the second precinct and that the administration's activities were not being adequately explained or properly defended by Altonen. (See id. at 70.)

In addition to being reassigned, the function of professional development was removed from her job duties, which left her with significantly less responsibility and reports than the other captains. (See Altonen Aff. ¶¶ 1-2.) Altonen also was not invited to staff and individual meetings with McManus and she claims that he would bypass her authority and meet directly with individuals underneath her. (See id. ¶¶ 6-8.)

On July 12, 2004, Altonen filed this action in Minnesota state court claiming that defendants violated her First Amendment right to free speech in violation of 42 U.S.C. § 1983 by retaliating

against her for supporting Gerold for the chief of police position and for filing the MGDPA lawsuit against the City.[3]  Altonen claims that the City also violated the Minnesota Whistleblower Statute.  <u>See</u> Minn. Stat. § 181.932.  Defendants removed the case to this court pursuant to 28 U.S.C. § 1441, and now move for summary judgment.

**DISCUSSION**

**I.   Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In order for the moving party to prevail, it must demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) **(quoting Fed. R. Civ. P. 56(c)).**  A fact is material only when its resolution affects the outcome of the case.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A dispute is genuine if the

---

[3]  Altonen also claimed that defendants violated her right to free speech under the Minnesota Constitution, but she has since voluntarily dropped that claim.

evidence is such that it could cause a reasonable jury to return a verdict for either party.  See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the non-moving party. See id. at 255.  The non-moving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial.  See Celotex, 477 U.S. at 324.  Moreover, if a plaintiff cannot support each essential element of a claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.  Id. at 322-23.

## II.  Section 1983 Claim

McManus moves for summary judgment on grounds of qualified immunity.  Qualified immunity affords protection from civil liability to government agents who perform discretionary functions if their actions are objectively reasonable in light of clearly established legal principles.  See Anderson v. Creighton, 483 U.S. 635, 638 (1987).  Qualified immunity is a question of law that the court decides early so as to shield appropriate public officials from suit.  Hunter v. Bryant, 502 U.S. 224 (1991). The court first determines whether the facts as alleged by the plaintiff establish a violation of a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  If they do, the court next determines whether the right alleged to be violated was clearly established at the time of

the violation so that a reasonable officer would have known his conduct to be unlawful. Id. at 202.

Plaintiff alleges a violation of her First Amendment right to free speech. It is well established that a public employer may not retaliate against an employee "on a basis that infringes that employee's constitutionally protected interest in freedom of speech." Rankin v. McPherson, 483 U.S. 378, 383 (1987). To survive summary judgment, plaintiff has the burden to establish that her speech was constitutionally protected and a substantial or motivating factor in an adverse employment decision. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Cox v. Dardanelle Pub. Sch. Dist., 790 F.2d 668, 672 (8th Cir. 1986). If plaintiff meets this burden, defendants then must establish by a preponderance of the evidence that the same employment decision would have been made in the absence of the protected conduct. Cox, 790 F.2d at 672. Whether speech is constitutionally protected is a question of law, whereas the question of whether the speech was a substantial or motivating factor is a question of fact. Kincade v. City of Blue Springs, 64 F.3d 389, 395 (8th Cir. 1995); Cox, 790 F.2d at 675.

**A.   First Amendment Protection**

The court determines whether a public employee's speech is protected by the First Amendment through a two-step inquiry. Connick v. Myers, 461 U.S. 138, 143-147; Kincade, 64 F.3d at 395.

First, the court decides whether the speech touches upon a matter of public concern by evaluating its content, form and context. Kincade, 64 F.3d at 396.  If the speech touches on a matter of public concern, the court then balances the employee's interest as a citizen in commenting on the matter with the employer's interest in promoting the efficiency of performing its services.  Kincade, 64 F.3d at 395 (citing Pickering v. Bd. of Educ., 391 U.S. 563, 574 (1968)); see also Belk v. City of Eldon, 228 F.3d 872, 881 (8th Cir. 2000) (listing Pickering factors to be considered).

Speech touches upon a matter of public concern if it is a matter of "political, social or other concern of the community at large" rather than a matter of personal interest.  Kincade, 64 F.3d at 396 (quoting Connick, 461 U.S. at 146).  The court focuses on whether the plaintiff advanced the speech as a "concerned public citizen, informing the public that the state institution is not properly discharging its duties" or as an employee concerned with internal policies and practices relevant only to the institution's employees.  Id.  "If the speech was mostly intended to further the employee's private interests rather than to raise issues of public concern, her speech is not protected, even if the public might have an interest in the topic of her speech."  Bailey v. Dep't of Elem. & Secondary Educ'n., 451 F.3d 514, 518 (8th Cir. 2006).

### 1.   The MGDPA Lawsuit

Plaintiff argues that she had a right to a copy of the investigative file and that commencing the MGDPA lawsuit was a matter of public concern because the public has an interest in the rights of public employees to pursue their legal remedies.  The filing of a lawsuit by a public employee constitutes protected speech only if the lawsuit addresses a matter of public concern. See Adair v. Charter County of Wayne, 452 F.3d 482, 492 (6th Cir. 2006) (Fair Labor Standards Act lawsuit did not involve matter of public concern but rather private concern of nonpayment of overtime); Zorzi v. County of Putnam, 30 F.3d 885, 896 (7th Cir. 1994) (content and context of lawsuit determines whether it relates to matter of public concern).

The court finds that plaintiff did not file the MGDPA lawsuit as a concerned citizen attempting to inform the public of a purported violation of law by the City or its officials.  Rather, she filed the lawsuit as a City employee to obtain an internal file that contained confidential information regarding an allegation of misconduct against her.  The public's general interest in plaintiff being afforded her rights under the MGDPA does not, alone, suffice to characterize the lawsuit as touching upon a matter of public concern.  See Bailey, 451 F.3d at 518.  Having considered the context in which plaintiff filed the MGDPA lawsuit, particularly her personal objective in obtaining the contents of the file, as

well as the content of the allegations contained therein, the court concludes that the lawsuit did not touch upon a matter of public concern.  Therefore, the MGDPA lawsuit may not serve as a basis for plaintiff's § 1983 First Amendment claim.

## 2.   Political Support of Gerold

Defendants argue that plaintiff's political support of Gerold for chief of police did not touch upon a matter of public concern because it was motivated by personal desires to see her friend Gerold win and to benefit from future promotional opportunities. The court disagrees.  "One's personal gain from speech does not eliminate constitutional protections from speech that is otherwise political."  Darnell v. Ford, 903 F.2d 556, 563 (8th Cir. 1990) (citing Connick, 461 U.S. at 147); cf. Duckworth v. Ford, 995 F.2d 858, 861 (8th Cir. 1993) (rejecting argument that self-interest precludes speech from being afforded constitutional protection). The city council's selection of a new chief of police entailed an evaluation of the integrity and qualifications of candidates for a highly visible public office.  Plaintiff did not limit her support of Gerold to within the department, but went so far as to telephone city council members to inform them of her opinion.  The court finds that given the breadth of responsibility of the City's chief of police and the context within which plaintiff voiced her support of Gerold, her speech touched upon issues of political and social concern to the general public.  See Morris v. Lindau, 196 F.3d 102,

12

111, 113 (2d Cir. 1999) (crime rates and police staffing "quite plainly" involve matters of public concern as do expressions of support for chief of police); Jandro v. Foster, 53 F. Supp.2d 1088, 1096 (D. Colo. 1999) (support of current chief of police at city council meeting touched upon matters of public concern).

The court next determines whether plaintiff's interest in supporting Gerold's candidacy outweighed defendants' interest in maintaining an efficient workplace. See Kincade, 64 F.3d at 395. Defendants argue that the Pickering factors weigh in their favor because the position of inspector is a policymaking position and a chief of police is entitled to appoint inspectors with whom he works well. "An employee's status as a policymaking or confidential employee weighs heavily on the government's side of the Pickering scale when the speech concerns the employee's political or substantive policy views." Hinshaw v. Smith, 436 F.3d 997, 1007 (8th Cir. 2006). However, to invoke the Pickering balancing test the employer has the burden to produce evidence that the speech had an adverse effect on the efficiency of its operations. Burnham v. Ianni, 119 F.3d 668, 678 (8th Cir. 1997) (en banc). Absent such a showing, "there are no government interests in efficiency to weigh against First Amendment interests." Belk, 228 F.3d at 878. Defendants have not made any showing or set forth any argument that plaintiff's support of Gerold disrupted the efficiency of the police department's

operations.   There being no interests to weigh in defendants'
favor, plaintiff's political support of Gerold for chief of police
is afforded the protections of the First Amendment.

####    B.   Adverse Employment Action

Plaintiff argues that the following employment actions were
adverse: (1) the decision on March 11, 2004, to authorize further
interviews concerning the allegation against plaintiff that she had
inappropriately caused Skomra's transfer, (2) the decision to send
a different officer to the Senior Management Institute of Policing
and (3) the decision to reassign plaintiff as the captain of the
administrative services division.   To constitute an adverse
employment action, the employer's decision must result in an
adverse and material change in the terms or conditions of
employment.   Bechtel v. City of Belton, 250 F.3d 1157, 1162 (8th
Cir. 2001).   "Although actions short of termination may constitute
adverse actions, not everything that makes an employee unhappy is
an actionable adverse action."   Id. (internal quotations omitted).

As to the internal investigation, it resulted from an
allegation of misconduct against plaintiff by Skomra.   McManus,
French, Caldwell and the city attorney met for the first time on
March 11 to discuss the results of the investigation and determine
if further action was necessary.   Plaintiff has not shown how the
decision to conduct additional interviews adversely impacted or
materially changed the terms and conditions of her employment.   The

14

allegation against her was never sustained. Accordingly, the decision that further interviews were necessary did not constitute an adverse employment action. Cf. Jones v. Fitzgerald, 285 F.3d 705, 715 (8th Cir. 2002) (internal investigation not adverse employment action where no material disadvantage results).

As to plaintiff's inability to attend the Senior Management Institute of Policing, the court finds that, although a lost opportunity, that one-time inability to attend a prestigious institute did not adversely impact or materially change any of the terms or conditions of her employment. See Meyers v. Neb. Health & Human Servs., 324 F.3d 655, 659 (8th Cir. 2003) ("Loss of status and prestige alone do not rise to the level of an adverse employment action.") Therefore, the decision to send a different officer to the institute did not constitute an adverse employment action. Plaintiff's reassignment to be captain of administrative services, however, entailed a $12,000 decrease in pay, loss of a take-home vehicle and a substantial decrease in responsibility. Therefore, the court concludes that the reassignment did constitute an actionable adverse employment action.

### C.   Substantial or Motivating Factor

Plaintiff has proffered no direct evidence that McManus decided to reassign her because of her support of Gerold or that he was even aware that she had supported Gerold at the time the reassignment decision was made. Plaintiff alleges, however, that

McManus was on a mission to retaliate against Gerold and the officers who supported Gerold.  In support of her allegation, plaintiff points to the fact that McManus suspended Gerold, Lieutenant Mike Carlson and Lieutenant Mike Martin shortly following his appointment, a decision he claimed to have made based on his concern that Gerold had ordered the destruction of an internal memorandum regarding the Duy Ngo investigation.  (See McManus Dep. at 38-40.)  Plaintiff alleges that Carlson supported Gerold for chief of police and McManus based the decision to suspend the three officers on information that he knew was false. Following an external investigation, McManus reinstated all three officers to their positions.  Plaintiff also cites to the fact that Gerold lost authority over patrol, a responsibility that she previously shared with another commander.  Lastly, plaintiff cites to the City's failure to discipline two officers who lied during the investigation of the allegation against her, and alleges that they were not disciplined because they did not support Gerold.[4]

---

[4]  In addition, plaintiff cites to deposition testimony of city councilman Paul Ostrow, Gerold and Martin, as well as the transcript of an interview of Martin by the Bureau of Criminal Apprehension.  (See Hvass Aff. ex. 4.)  However, plaintiff has not provided the court with a copy of the depositions of Ostrow, Gerold or Martin.  Therefore, the court has not had the benefit of their testimony.  Further, even if the court were to consider the argument of plaintiff concerning the statements of Martin and Ostrow, those statements would not suffice to create an inference of retaliatory motive behind plaintiff's reassignment.  Rather, those statements cited by plaintiff, at most, create an inference that McManus had a motive to retaliate against Gerold, who McManus

(continued...)

Plaintiff has not established that the above actions were taken based upon those officers' support or lack of support of Gerold for chief of police. The court finds that plaintiff has failed to establish a causal nexus between her support of Gerold and the decision to reassign her to captain. Neither has plaintiff proffered sufficient evidence to create an inference of retaliatory motive on the part of McManus. See Hughes v. Stottlemyre, 454 F.3d 791, 797 (8th Cir. 2006) (plaintiff can establish causal connection if evidence gives rise to an inference of retaliatory motive). The facts and evidence cited by plaintiff, without more, do not suffice to create a genuine issue of material fact as to whether plaintiff's support of Gerold was a substantial or motivating factor in McManus's decision to reassign her. Therefore, summary judgment is warranted.

Moreover, even if plaintiff had proffered sufficient evidence to infer that the reassignment decision was based on her support of Gerold, the court finds that defendants have met their burden to establish that the decision would have been made absent plaintiff's protected speech. See Cox, 790 F.2d at 672. Plaintiff's role as inspector on the chief's executive team, the concerns of her direct supervisor regarding her attitude and ability to work effectively with command staff, her perceived animosity towards McManus, the

---

[4](...continued)
reinstated as a deputy chief. (See Pl.'s Mem. Law Opp'n Def.'s Mot. Summ. J. at 4-5, 9-10.)

resignation of the administrative services director, the goal of the transition team to downsize and the recommendations of Lubinski and Dolan all support the court's finding that defendants have brought forth legitimate, non-retaliatory reasons as to why McManus decided to reassign her.   Therefore, even if plaintiff had established a prima facie case, defendants have met their burden to establish that the same employment decision would have been made absent plaintiff's protected speech.

For all of the above reasons, plaintiff has not established a violation of her First Amendment right to free speech.   Therefore, McManus is entitled to qualified immunity and summary judgment is warranted on plaintiff's § 1983 claim against McManus in his individual capacity.   See Saucier, 533 U.S. at 201 (if allegations fail to establish violation of a constitutional right, no further inquiry is necessary and qualified immunity is warranted).

As to the City, a municipality is only subject to liability under § 1983 if a plaintiff establishes that the municipality maintained a policy or custom "the implementation of which amounted to deliberate indifference to [her] constitutional rights." Lund v. Hennepin County, 427 F.3d 1123, 1125 (8th Cir. 2005) (citing City of Canton v. Harris, 489 U.S. 378, 388-91 (1989) and Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978)).   Plaintiff has proffered no evidence that the City maintained such a policy or custom, and the court has now determined that she has not

18

established a violation of her constitutional rights.  Accordingly, summary judgment in favor of the City is warranted on plaintiff's § 1983 claim.  For these same reasons, summary judgment is also warranted on plaintiff's § 1983 claim against McManus in his official capacity as chief of police.  See Grayson v. Ross, 454 F.3d 802, 811 (8th Cir. 2006)(official capacity claim is tantamount to suing municipal entity).

## III.  Whistleblower Claim

A district court has discretion whether to exercise supplemental jurisdiction over state law claims joined in a civil action after all claims over which it has original jurisdiction have been dismissed.  28 U.S.C. § 1367(c)(3); see also Franklin v. Zain, 152 F.3d 783, 786 (8th Cir. 1998).  The court has determined that defendants are entitled to summary judgment on all claims within its original jurisdiction.  The court declines to exercise supplemental jurisdiction over plaintiff's whistleblower claim, and dismisses that claim without prejudice.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that defendants' motion for summary judgment [Docket No. 37] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 11, 2006

                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court